NEW YORK, PROVIDENCE AND BOSTON RAILROAD COMPANY, Respondent, *v.* WILLIAM P. DIXON, as Assignee etc., Appellant.

The facts stated in a case submitted under the Code of Civil Procedure (§ 1279) were substantially these: The firm of M.'s Sons were the financial agents of the plaintiff. H., one of said firm, was also plaintiff's treasurer. The firm kept the transfer book, paid all dividends to plaintiff's stockholders and frequently was in advance to it, but neither charged nor allowed interest, and on plaintiff's books the account was kept in the name of the firm; it kept no account in the name of H. as treasurer. Remittances made by plaintiff were at one time made to the order of H., but at his request they were thereafter made direct to the order of the

firm. Plaintiff's annual printed reports stated its funds were in the hands of the firm; there was no statement showing funds in the hands of the treasurer. The firm failed and made an assignment for the benefit of creditors without preferences. The members of the firm also made assignments of their individual estates. At this time the firm books showed an indebtedness to plaintiff of $94,000. The firm assets were not sufficient to pay its debts. The individual estate of H. would pay his individual indebtedness, including the balance due plaintiff, if that should be decided to be an individual, not a firm indebtedness. *Held*, that the statement failed to show a receipt by H., as treasurer, of the moneys in controversy, but the indebtedness appeared to be simply that of the firm; and that plaintiff was only entitled to share with other firm creditors in the surplus of the individual assets of H. after payment of his individual indebtedness.

There is no difference between the powers, duties and liabilities of agents of corporations and those of natural persons, unless expressly made by the act of incorporation or by-laws.

(Argued March 13, 1889; decided April 16, 1889.)

APPEAL by defendant from a judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made April 3, 1888, directing judgment in favor of plaintiff, on a submission of a controversy without action on agreed facts.

The statement of facts agreed upon and submitted was as follows :

" The New York, Providence and Boston Railroad, whose road extends from New London and Stonington, Connecticut, to Providence, Rhode Island, was incorporated by the legislature of the state of Rhode Island in June, 1832.

" Mr. Matthew Morgan of New York, father of Henry and Edward Morgan, the above-named assignors, and founder of the firm of Matthew Morgan & Son, bankers of New York, was the first president of the company, and that firm were its financial agents. After Matthew Morgan's death his sons continued the banking business, changing the firm name to M. Morgan's Sons, and one of them, Henry Morgan, the senior partner of the firm, in September, 1867, became treasurer of the railroad company, and continued to serve in that capacity, being elected

year by year until June, 1884, and the firm of M. Morgan's Sons continued to act as the financial agents of the railroad company. They kept its transfer books and paid all dividends to stockholders and frequently were in advance to the company. Henry Morgan, who was one of the largest individual stockholders of the railroad company, served as treasurer of the railroad company without salary, and the firm of M. Morgan's Son's neither charged nor allowed interest on the railroad company's account. The account itself on the firm's books was kept in the name of the New York, Providence & Boston Railroad Company, and on the books of the railroad company the account was kept in the name of M. Morgan's Sons. The railroad company did not keep an account in the name of Henry Morgan, treasurer. Remittances were at one time made to the order of the treasurer, but after December, 1880, at the request of Henry Morgan, made, because of expected absence, the remittances were sent (though, so far as the minutes show, no action was taken by the board of directors on the subject) direct to the order of the firm of M. Morgan's Sons. The annual printed reports distributed to the stockholders of the railroad company, stated the funds in the hands of M. Morgan's Sons;" there was no statement showing funds in the hands of the treasurer. In June, 1884, the firm of M. Morgan's Sons failed and made an assignment without preference.

"The individual members of the firm, Henry and Edward Morgan, at the same time made assignments, without preferences, of their individual estates. All the assignments were made to William P. Dixon. The books of the firm of M. Morgan's Sons show that at the time of the failure there was due to the railroad company the sum of ninety-four thousand dollars. The debts of the firm of M. Morgan's Sons were large, and the creditors of the firm will receive but a portion of the amount due them. The admitted debts of the individual members of the firm were small, and will be paid in full.

" The individual estate of Henry Morgan is sufficient to pay

the amount due the railroad company in full, if, in the opinion of this honorable court, it should be decided that his individual estate is liable."

*William Allen Butler* for appellant.    The fact that Morgan received no salary as treasurer is immaterial, because his duty to account for and pay over the funds of the company was not affected by this fact.    The duty existed independently of the question of compensation.    (1 Morawetz on Corp. §§ 503, 552.)    As treasurer it was his duty to keep the money of the railroad company distinct from his own money and pay over any balance on demand.    (*Second Ave. R. R. Co.* v. *Coleman*, 24 Barb. 300.)    As a trustee he was bound to keep the funds separate from his private funds, and if he did not do so, he became liable as a borrower.    (*In re Stafford*, 11 Barb. 353 ; *Mumford* v. *Murray*, 6 Johns. Ch. 1 ; *Baskin* v. *Baskin*, 4 Lans. 90, 93 ; *Case* v. *Abeel*, 1 Paige, 393 ; *Kellett* v. *Rathbun*, 4 id. 102 ; *Prescott's Estate*, 1 Tuck. 430 ; Wharton on Agency, § 279 ; *Wilmerding* v. *McKesson*, 103 N. Y. 329.)    The treasurer of a corporation is responsible to the stockholders for the safe-keeping of the funds, and the benefit of this responsibility by depositing the funds with others for safe-keeping.    (*Pearson* v. *Tower*, 55 N. H. 215, 217.)    By putting the money in his own firm he made it apparently his own, but did not thereby relieve himself from the duty of answering for it, to his principal, unless the railroad company did some act equivalent to a release of his personal liability.    (*Mass. L. I. Co.* v. *Carpenter*, 2 Sweeney, 734.) If the railroad company still retains its personal claim against Mr. Morgan, the fact that it has also acquired a further claim against the firm does not deprive it of the right to enforce its claim as against the separate estate of Henry Morgan.    On the old cases it would have a right to elect as against the two funds ; on the more recent authorities it has the right to prove against both estates and collect the full amount of its claim. (*B. W. Co.* v. *Juilliard*, 13 Hun, 506, 513 ; 75 N. Y. 535.) The sole question is whether or not the transactions amount,

.in law, to a release or a discharge of Mr. Morgan from his liability as treasurer. If money received by Morgan, as treasurer, had been placed by him on deposit with a bank or banking firm, such money would have been impressed with a trust in favor of the railroad company, and could have been followed by the company and recovered, so long as it had not been transferred for value without notice. ( *Van Allen* v. *Am. Nat. Bk.*, 52 N. Y. 1; *Nat. Bk.* v. *Ins. Co.*, 104 U. S. 54.) The right of the general creditors to have Morgan's individual property applied to the payment of their claims is subordinate to the settled rule that individual creditors must be first paid out of individual property. (*Hewitt* v. *Northrop*, 75 N. Y. 506.)

*Wheeler H. Peckham* for respondent. Even if the treasurer had possessed all the powers ascribed to him by plaintiff, and had of his own motion deposited these moneys to the credit of the plaintiff, he would not be liable. If the agent keeps the funds of his principal separate from his own and deposits them with reputable banks or bankers, he fulfills his whole duty and is no longer responsible. (1 Perry on Trusts, § 443; *Johnston* v. *Newton*, 11 Hare, 160; *Baskin* v. *Baskin*, 4 Lans. 90; Hill on Trustees [3d Am. ed.] 573, note 1; *In re Stafford*, 11 Barb. 354.)

PARKER, J. It appears from the books of M. Morgan's Sons, bankers, the financial agents of the New York, Providence and Boston Railroad Company, that, in June, 1884, when the firm failed and made a general assignment, without preference, for the benefit of creditors, it was indebted to plaintiff in the sum of $94,000.

Henry Morgan, the defendant's assignor, was a member of the firm of M. Morgan's Sons. He also made a general assignment, without preference, of his individual property. The liability of the firm to the plaintiff for the amount on deposit is unquestioned. That the balance of the estate of Henry Morgan, after the payment of his individual liabilities, must

be applied in payment of the firm obligations follows as a matter of law. The question now to be determined is whether or not Henry Morgan is also liable for such amount as treasurer of the plaintiff.

There is no difference in principle or precedent between the powers, duties and liabilities of the agents of corporations and those of natural persons, unless expressly made by the act of incorporation or by-laws. (Angell & Ames on Corp. [9th ed.] § 315; Pomeroy's Eq. Juris. vol. 2. § 1062 and notes.)

The stipulation states that the plaintiff is a foreign corporation, to wit, a corporation of the state of Rhode Island, but is silent as to what are the powers, functions and duties of the treasurer of such foreign corporation, as determined by its charter and by-laws. Neither does it appear that Henry Morgan has been guilty of a breach of any duty imposed, by the contract between the corporation and him as its treasurer, or by the charter and by-laws. The stipulation is silent upon those points.

In the absence of such proof, as between Henry Morgan as such treasurer and the plaintiff, he must be held to the same measure of liability, and none other, as that imposed upon all classes of persons who are clothed with fiduciary relations towards property in which others are beneficially interested.

By such standard he cannot, in any event, be held liable to respond to the plaintiff for moneys not received by him, and, we think, it cannot be held, from the evidence before us, that the treasurer received from the plaintiff the moneys in controversy.

Many years prior to the election of Henry Morgan as treasurer, the firm of Matthew Morgan & Son were the financial agents of the plaintiff, and after the death of Matthew Morgan the firm of M. Morgan's Sons continued to act in such capacity down to the time of the making of the general assignment.

As financial agents of the plaintiff the firm kept the transfer books of the railroad company, paid all dividends to stockholders, frequently advanced money to the company and

neither charged nor allowed interest on the railroad company's account.

On the part of the railroad company, it is not only admitted, in so many words, that M. Morgan's Sons were its financial agents, but, in addition, it appears, from the manner in which the plaintiff conducted its business, that while Henry Morgan was its treasurer, it, nevertheless, recognized and permitted the exercise of certain functions by M. Morgan's Sons, whom they termed financial agents, which were not attempted to be exercised by its treasurer.

The keeping of the transfer books of the company, the payments of dividends, the advancement of moneys, the waiver of interest on advancements, the refusal to allow interest on deposits, by the financial agents, were ratified and acquiesced in by the corporation.

Beyond this the plaintiff distinctly recognized the relation existing between it and M. Morgan's Sons by keeping the accounts on its own books in the name of such firm, and by publishing in its annual reports, distributed to stockholders, that its funds were in the hands of M. Morgan's Sons.

It appears clearly, therefore, that the railroad company recognized the relation existing between it and its financial agents to be separate and apart from the obligations and duties of its treasurer. That in its transactions with M. Morgan's Sons as financial agents, it did not transact nor did it understand it was transacting business with Henry Morgan as treasurer.

Now it appears that, prior to December, 1880, and prior also to the deposit of the moneys in question, remittances were, for a time, made to the order of the treasurer, who deposited them with M. Morgan's Sons, but about that time, at the request of the treasurer, because of expected absence, the remittances were thereafter sent to the order of the firm of M. Morgan's Sons. The financial agents, therefore, and not the treasurer, received the moneys with which the plaintiff seeks to charge the treasurer in this action, and under no rule of liability applicable to agents or trustees, can the

plaintiff recover of Henry Morgan that which he has not received, and which it has, in fact, paid to other parties.

If, however, it be conceded, as contended for by the respondent, that the sending of remittances to the order of M. Morgan's Sons was, in effect, sending them to the treasurer (because done at his request); and that the deposit with the firm must be deemed a deposit by him, liability of Henry Morgan as treasurer to respond for the fund is not established. The moneys are not now in his possession ; he has not wasted or mixed them with his own, but has properly discharged his trust by depositing the funds with the banking firm recognized by the plaintiff as its financial agent and place of deposit for a long period of years. Had the designation of M. Morgan's Sons as the place of deposit been made by the treasurer, in the first instance, instead of the plaintiff, and conceding, further, that he can be held to have received and deposited the moneys with the banking firm, still he cannot be held liable as treasurer because his act in so doing was fully ratified by the plaintiff.

His request that the remittances be sent to M. Morgan's Sons, because of his intended absence, was a distinct notice of the place of deposit. It called the attention of plaintiff sharply to the fact, and plaintiff acquiesced in the depository by the sending of remittances to the order of the firm, and further evidenced the acquiescence by keeping the account on the books of the corporation, in the name of the banking firm, and by reporting to its stockholders that its funds were in the hands of M. Morgan's Sons.

The conduct of the corporation constituted a complete ratification of the act of the treasurer (if his act it was) in selecting the place of deposit, and absolved him from liability in that regard.

It follows, as the necessary result of our views, that the judgment appealed from should be reversed, with costs.

All concur.

Judgment reversed.